# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| CLARENCE EDWARD WALLESKE,<br><br>    Plaintiff,<br><br>v.<br><br>SERGEANT RONTERRIOUS WILLIAMS, in his individual capacity,<br><br>    Defendant. | Case No.<br><br>**Demand for Jury Trial** |

# COMPLAINT

Plaintiff Clarence Edward Walleske asserts claims against Defendant Sergeant Ronterrious Williams under the Eighth Amendment to the United States Constitution for his failure to protect Plaintiff from extreme violence and torture while he was incarcerated at Liberty Correctional Institution. Plaintiff alleges as follows:

## Jurisdiction & Venue

1. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Eighth Amendment to the Constitution.

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this district under 28 U.S.C. § 1391(b), this being the district where the claims arose and where Defendant conducts business.

4. All conditions precedent to this lawsuit have occurred, been performed, or been waived.

## Parties

5. At all times material hereto, Plaintiff Clarence Edward Walleske was an inmate in the custody and care of Florida Department of Corrections ("FDOC") at its Liberty Correctional Institution ("LCI") in Bristol, Florida.

6. At the time of filing this lawsuit, Plaintiff is not incarcerated or a "prisoner" as that term is defined in the Prison Litigation Reform Act ("PLRA") and caselaw interpreting it.[1]

7. At all times material hereto, Defendant Sergeant Ronterrious Williams was a correctional officer employed by FDOC at LCI and was acting under color of law. Williams is being sued in his individual capacity.

## Factual Allegations

---

[1] Plaintiff, proceeding pro se, previously filed a lawsuit concerning the same subject matter while incarcerated. *See Walleske v. Williams*, No. 4:24-cv-203-WS-MAF (N.D. Fla.). That case was dismissed without prejudice after Plaintiff sought to hold it in abeyance so that that he could exhaust his administrative remedies under the PLRA. *See id.* at ECF No. 31. Because this lawsuit is not "brought" by a prisoner, now that Plaintiff has been released, the PLRA and its exhaustion requirement no longer apply.

8. On or about February 19, 2024, Sergeant Williams was tasked with, among other things, operating the control room (or "bubble") in I ("eye") Dormitory at LCI.

9. I Dormitory at LCI, like other dormitories throughout the state prison system, consists of several wings (also called quads) that emanate from the centrally located control room, with windows allowing an officer stationed within the bubble to observe the various wings in the dormitory. The bubble also consists of security cameras and an intercom system, so that the officer stationed there can monitor all wings in the dormitory both visually and audially.

10. FDOC rules require that at least one officer on shift in a dormitory stay within the bubble to monitor the intercom and camera systems, but also to operate and control the doors between the various wings.

11. As part of his duties in the bubble on February 19, 2024, Sergeant Williams was tasked with, among other things, monitoring the fixed-wing security cameras in the dormitory, listening on the intercom for disturbances in the three wings of the dormitory, opening and closing the doors that connected the wings surrounding the bubble area, and maintaining and updating a log of all security checks.

12. Despite these requirements, Sergeant Williams failed to ensure that the security camera footage was fully operational—one of the first items that the bubble officer is required to sign off on when the shift starts.

13. Sergeant Williams also failed to conduct security checks or ensure that security checks were performed by his subordinates in I Dormitory throughout the morning and afternoon. At the time, guards were required to make security checks at least once per hour in I Dormitory.

14. Knowing that the cameras were not working, around 12:24 p.m. on February 19, Sergeant Williams permitted two gang member inmates to leave quad 3 and enter quad 1 without an escort and in violation of FDOC policy. The gang members were carrying a modified shop broom and an approximately 10" plexiglass shank, which Sergeant Williams would easily be able to see from inside the bubble.

15. At that time, Plaintiff—who was in his mid-60s—was housed in quad 1 in a lower-level cell.

16. The gang members walked over to Plaintiff's cell and began to violently torture him while screaming that Sergeant Williams told them that Plaintiff had molested a child.

17. One assailant used the plexiglass shank to repeatedly stab Plaintiff, while yelling that they would kill him. The other assailant used the modified shop

4

broom to strike Plaintiff in the head.

18. The assailants body slammed Plaintiff onto the concrete floor, where they repeatedly punched him in the head before stomping on his head with their boots. One assailant repeatedly penetrated Plaintiff's anus for around a half hour.

19. Plaintiff had been screaming for around a half hour, which screams were audible on the intercom in the bubble. Indeed, according to FDOC's Office of the Inspector General, moments after the assailants entered Plaintiff's cell, "you can hear what appears to be someone moaning and screaming for help."

20. Nevertheless, despite these audible noises on the intercom, Sergeant Williams did not leave the bubble or call for help while the gang members were mercilessly stabbing, beating, and sexually abusing him.

21. The assailants then raided Plaintiff's cell, stealing his canteen, radio, headsets, razor, and shoes, among other things. They carried these items out of the cell around 12:53 p.m., leaving the modified broom:



22. Approximately 28 minutes after entering Plaintiff's quad, the assailants returned to the bubble area, where Sergeant Williams was stationed. Despite Plaintiff's pleas for help, and despite seeing the assailants carrying shoes, a radio and other items from Plaintiff's cell, Sergeant Williams opened the security doors and permitted them to return to quad 3.

23. At that time, Sergeant Williams did not call for help or take any actions to assist Plaintiff.

24. Another half hour went by before anyone called for help, when an officer noticed that Plaintiff was in his cell bleeding from his head. Below is a picture of the area where Plaintiff was found, with blood covering the wall and latex gloves the assailants used to penetrate Plaintiff:



25. Medical staff at LCI deemed Plaintiff's injuries life threatening and he was life-flighted to Tallahassee Memorial Hospital ("TMH"). According to providers at TMH, Plaintiff suffered multiple nondisplaced rib fractures, maxillary sinus fracture, moderate edema to face and torso, and multiple minor puncture wounds to his left buttock.

26. In addition to the physical injuries, Plaintiff experiences severe emotional distress as a result of the attack, including, among other things, humiliation, shame, anguish and anxiety.

## CAUSE OF ACTION

### Violation of 42 U.S.C. § 1983 – Eighth Amendment

Plaintiff repeats and re-alleges paragraphs 1 through 26 above, as if fully set forth herein and further alleges:

27. Plaintiff is entitled to relief against Sergeant Williams for violation of the Eighth Amendment to the U.S. Constitution.

28. The Eighth Amendment's prohibition on cruel and unusual punishments requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). The duty to protect encompasses "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks omitted).

29. Sergeant Williams, while acting under color of state law, unlawfully and without justification violated the Eighth Amendment when he, with deliberate indifference to the serious risks to Plaintiff's safety and wellbeing, (1) knowingly permitted inmates to move from quad 3 to quad 1 without escort and with weapons for purpose of attacking Plaintiff, (2) failed to take any action to intervene and stop or remedy the attack despite Plaintiff's audible pleas for help, and (3) failed to take adequate measures to ensure Plaintiff's safety, health, or wellbeing after the assailants left his cell.

30. Sergeant Williams violated that right by acting maliciously and sadistically with a sufficiently culpable state of mind to cause harm Plaintiff, with such level of recklessness as set forth in criminal law. Such recklessness includes, without limitation, permitting gang members to enter Plaintiff's dorm without supervision and with weapons, and telling them that Plaintiff was a child molester, while permitting them to enter Plaintiff's cell. Sergeant Williams then did nothing in response to Plaintiff's audible pleas for help.

31. As a direct and proximate result of Sergeant Williams' deliberate indifference, Plaintiff sustained brutal and severe physical and mental injuries.

32. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## Prayer for Relief

Plaintiff Clarence Edward Wallenske demands the following relief:

A. Nominal damages;

B. Compensatory damages;

C. Punitive damages;

D. Reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988 and any other applicable law; and

E. Such other just and proper relief.

## Demand for Jury Trial

Pursuant to Rule 38, Plaintiff demands a jury trial of all issues so triable.

Dated: February 18, 2026

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
2296 Henderson Mill Rd. N.E. #116
Atlanta, Georgia 30345
Tel: (305) 523-9023
james@slater.legal

*Attorneys for Plaintiff Clarence Walleske*

9